**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| AMERICAN PAD & PAPER COMPANY, | ) Case Nos. 00-00066 through |
| | ) 00-00072(PJW) |
| Debtors. | ) |
| _____ | ) (Substantially Consolidated) |
| | ) |
| STEVEN G. SINGER, as Chapter 7 | ) |
| Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adv. Proc. No. 05-50477(PJW) |
| | ) |
| GIBSON, DUNN & CRUTCHER, LLP, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Joel A. Waite
John T. Dorsey
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Mitchell A. Karlan
Marci R. Etter
Gibson, Dunn & Crutcher LLP
200 Park Avenue
47th Floor
New York, NY 10166

Counsel for Gibson, Dunn &
Crutcher LLP


Adam Singer
Cooch and Taylor
824 Market Street, Suite 1000
P.O. Box 1680
Wilmington, DE 19899-1680

Darlene Fairman
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016

Attorneys for Steven G. Singer,
Trustee

Dated: October 13, 2006

**WALSH, J.**

In the above captioned adversary proceeding, this is with respect to defendant Gibson, Dunn and Crutcher's ("GDC") motion to dismiss (Adv. Doc. # 6) as converted by Court order to a motion for summary judgment. (Adv. Doc. # 20). Based on my review of GDC's supplemental brief (Adv. Doc. # 67) and Trustee's supplemental brief (Adv. Doc. # 73), as well as numerous matters in the record of these chapter cases and related adversary proceedings, I will deny GDC's motion for summary judgment.

## BACKGROUND

The Debtors' involuntary chapter 11 cases were filed on January 10, 2000. GDC was lead counsel for the Debtors during the chapter 11 cases. During the chapter 11 cases the Debtors sold their business and assets. The cases were converted to chapter 7 on January 3, 2002. In his Complaint, filed on February 22, 2005, Steven G. Singer ("Trustee") alleges that GDC committed malpractice in failing to seek avoidance of transfers of the Debtors' property during the "gap period", i.e., the period between the filing of the involuntary petition on January 10, 2000 and the Debtors' consent to the petition which produced an order for relief on January 14, 2000. The Complaint identifies 49 gap period payments, aggregating $1,842,658.80, which the estate could have avoided if appropriate complaints were filed pursuant to Bankruptcy Code § 549 within the

two-year limitation period set forth in § 549(d).[1] The Complaint is premised on the "transfers" having occurred when the checks cleared the Debtors' bank account.

Following Trustee's election on February 13, 2002, GDC's final fee application was approved on April 10, 2002.  Trustee did not object to that application.  By its motion, GDC argues that Trustee is precluded under the doctrine of res judicata, collateral estoppel and the law of the case from asserting malpractice claims against GDC.  It is undisputed there is case law supporting the

---

[1]In pertinent part Bankruptcy Code § 549 provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate —
    (1) that occurs after the commencement of the case; and
    (2)(A)that is authorized only under section 303(f) or 542(c) of this title; or
      (B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

* * *

(d) An action or proceeding under this section may not be commenced after the earlier of —
      (1) two years after the date of the transfer sought to be avoided; or
      (2) the time the case is closed or dismissed.

4

proposition that court approval of a final fee application of a debtor's professional bars any future claims for malpractice against that professional. <u>See, e.g.</u>, <u>Grausz v. Englander</u>, 321 F.3d 467 (4th Cir. 2003); <u>In re Iannochino</u>, 242 F.3d 36 (1st Cir. 2001); <u>In re Intelogic Trace, Inc.</u>, 200 F.3d 383 (5th Cir. 2000). GDC asserts that Trustee knew or should have known before GDC's final fee application was approved that no actions to avoid gap period payments had been commenced and that the gap period payments had been made. (Adv. Doc. # 67, pp. 1-2).

<b>SUMMARY JUDGMENT STANDARD</b>

The summary judgment standard is not in dispute. Summary judgment may only be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Tse v. Ventana Med. Sys., Inc.</u>, 297 F.3d 210, 218 (3d Cir. 2002); <u>Medtronic Vascular, Inc. v. Boston Scientific Corp.</u>, 348 F. Supp. 2d 316, 322 (D. Del. 2004). In deciding whether a triable issue of material fact exists, the Court must draw all reasonable inferences in favor of the non-movant. <u>Emerson Radio Corp. v. Orion Sales, Inc.</u>, 253 F.3d 159, 162 (3d Cir. 2001); <u>Haft v. Dart Group Corp.</u>, 841 F. Supp. 549, 562 (D. Del. 1993). Any doubts as to the existence of a genuine issue of fact must be resolved against the moving party. <u>W.B. v. Matula</u>, 67 F.3d 484, 493 (3d Cir. 1995); <u>Clark v. Neal</u>, 890 F. Supp. 345, 349 (D. Del. 1995).

**DISCUSSION**

GDC cites to substantial deposition testimony and time records to show that Trustee and his professionals had plenty of opportunity to become aware, and in fact did become aware, of the alleged malpractice prior to the time GDC's final fee application was approved. In its response, Trustee presents substantial evidence supporting his position that there was insufficient time for Trustee to examine facts related to the alleged malpractice. Of particular note is the fact that the Debtors' voluminous "preference analysis" document (492 pages with more than 23,000 entries), a document heavily relied upon by GDC, was, at best, only a starting point in assessing potential § 549 recoveries. The affidavits referenced in Trustee's supplemental brief raise numerous serious factual challenges to GDC's assertions regarding what Trustee and his professionals knew about the gap period payments prior to the final fee award.

While I agree with Trustee that there is substantial evidence to support his position that there are material disputed facts which preclude granting summary judgment, I will focus on an issue that the parties have not addressed but which I believe clearly supports the probability that Trustee and his professionals, prior to the final fee application approval, did not believe that GDC had engaged in the alleged malpractice. In focusing on the issue that I find significant here, I believe it is

helpful to outline some relevant sequence of events as follows:

January 10, 2000: Involuntary petition

January 14, 2000: Order for relief

November 21, 2001: Creditor Committee ("Committee") motion to convert to Chapter 7

December 21, 2001: Order converting to Chapter 7

January 3, 2002: Effective date of the conversion; Jeoffrey L. Burtch ("Burtch") appointed as interim trustee

January 10, 2002 - January 14, 2002: § 549(d) two-year limitation period expired

February 13, 2002: Trustee elected

March 5, 2002: GDC's final fee application notice

March 22, 2002: Trustee's election approved

April 10, 2002: GDC's final fee application approved

September 22, 2003: Trustee counsel's letter to GDC inquiring as to why no § 549 avoidance actions were filed prior to the expiration of the two-year limitation

February 22, 2005: Trustee's Complaint against GDC

As Trustee points out in his supplemental brief, the instant adversary proceeding is with respect to "potential 549 actions for checks written pre-petition and honored post-petition (during the Gap Period)."  (Adv. Doc. # 73, p. 11).  Paragraph 20 of the Complaint identifies 49 creditors and the amounts of their alleged gap period payments that GDC should have timely (i.e., within two years of the transfer) sought to avoid pursuant to § 549.

I believe it is important to examine how Trustee and his professionals viewed the § 549 issue at the outset and the early stages of the Chapter 7 case.  To put this in context, I think it is appropriate to first make reference to the Committee's motion to convert the cases to Chapter 7 and the statement made by Committee's counsel to the Court in presenting the motion to convert.  The focus of that motion was on the two-year limitation set forth in Bankruptcy Code § 546(a) and the benefit of the one-year extension resulting from the appointment of a trustee.[2] Specifically,  the conversion motion points out:

> The only assets remaining in the Debtors' estates that are not encumbered by the security interests and liens of the Debtors' secured lenders are certain potential avoidance actions and other litigation recoveries.  Section 546(a) of the Bankruptcy Code limits the period in which such avoidance actions may be commenced to two years after the entry of the order for relief.  If a trustee is appointed or elected under section

---

[2]Bankruptcy Code § 546(a) provides:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of —
    (1) the later of —
        (A) 2 years after the entry of the order for relief; or
        (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
    (2) the time the case is closed or dismissed.

702 before the expiration of the two-year
limitations period, section 546(a) extends
such period by one year.

The Committee believes that it is in the
best interest of all creditors for the
Debtors' cases to be converted to Chapter 7 of
the Bankruptcy Code to exploit the extension
afforded by section 546(a).  Such extension
will provide the Chapter 7 trustee with extra
time in which to prepare for the prosecution
of avoidance actions and other litigation or
to negotiate settlements of such actions
without the cost and expense of prosecuting
such claims.  If the Debtors' cases are not
converted, there is a significant risk that
the Debtors could not commence or resolve such
actions prior to the expiration of the
limitations period.  The Committee contends
that the risk that the limitations period
would expire far outweighs any benefit of
leaving these cases in chapter 11.

(Doc. # 1412, p. 5).

In presenting the motion to the Court on December 18,

2001 counsel for the Committee again focused only on § 546(a).

Counsel stated:

Perhaps the biggest reason motivating the
motion to convert the case to a Chapter 7 is
that we believe it is in the estate's best
interest and best interest of the creditors if
we take advantage of the provision in Section
546(a) which will give us an additional year's
period of time if a Trustee is appointed to
bring avoidance actions.  That time will
obviously allow the Trustee to come in, get
its hand around the avoidance actions,
determine which actions have merit, try to
reach a resolution and ultimately litigate, if
necessary.  For those reasons, we believe
conversion is appropriate and that's why we
filed the motion.

(Doc. # 1464, pp. 5-6).  Counsel for the Committee made no

9

distinction as to types of avoidance actions that would benefit
from the one-year extension:

> It is important that if your Honor is
> inclined to grant the motion that it will be
> granted, the order will be entered tomorrow at
> least within the next few days because the
> deadline for bringing avoidance actions is, I
> believe it's January 10th.  So we need the
> order entered promptly so we know the Trustee
> will be up and running on the 3rd and we get
> the benefit of the additional year provided by
> 546.

(Doc. # 1464, p. 8).

Unfortunately, as we know, while the conversion order was
entered on December 21, 2001, by its terms it did not become
effective until January 3, 2002, which meant that there were only
7 to 10 days for a chapter 7 trustee to examine the transactions
that might be avoided under § 549.  With the requested delayed
effective date of the conversion, it seems obvious that neither the
Debtors nor the Committee had given appropriate attention to the §
549 issue since the chapter 7 trustee, with no prior knowledge of
the Debtors' affairs, would only have a few days to gather the
facts, make assessments and file complaints.  So far as I can tell
from the record before me, during the two-year limitation period,
either the parties in interest were not properly informed as to the
gap period payments or they assumed that any § 549 recoveries would
be subject to the same two-year plus one-year limitation applicable
to the Bankruptcy Code's five avoidance provisions identified in §
546(a), including preference transfers under § 547.

According to his deposition, Burtch knew that his tenure as interim trustee was likely to be short-lived and consequently he undertook only limited activity. There is no evidence that he undertook a review of the gap period payments. At his July 17, 2006 deposition he was asked: "Have you ever been the plaintiff in an action to recover or to avoid, I should say, gap period payments?" His response: "Don't recall". (Burtch Dep. Tr., p. 12).

Mr. Robert F. Troisio ("Troisio"), who was engaged by Trustee as a liquidation consultant, expressed ignorance of the gap period payment issue. At his May 18, 2006 deposition he was asked: "What is, if you know, an avoidable gap period payment?" His answer: "I don't have a clue." (Troisio Dep. Tr., p. 6). He was asked: "When was the first time you had any conversation with anybody about avoidable gap period payments in connection with the Ampad bankruptcy?" His response: "Approximately a month ago."[3] (Id. at 7). Further in the deposition he was asked: "During the time that Mr. Burtch was the interim trustee, did you have any discussions with anyone on the subject of avoidable payments by Ampad?" His response: "Well, that's always a priority, but we do not work if there is an election being contemplated. The only work that is done are critical tasks, for example, bringing the cash

---

[3]This response is puzzling in light of the fact that Trustee counsel's time records reflect two discussions he had with Troisio, one in February and the other in March 2002, specifically with respect to "549 actions". (Etter Declaration (Adv. Doc. ## 68, 69, 70) Ex. Z).

in." (<u>Id.</u> at 12).  Further evidence of Troisio's lack of focus on the § 549 issue is the following testimony:  "Any check that was written prior to the filing and cleared after the filing date, which sometimes happens because banks are not able to stop their —- place a hold on the account, we always recover those checks with the preference actions." (<u>Id.</u> at 45-46).

The Etter declaration (Adv. Doc. ## 68, 69, 70) identifies as exhibit DD a series of demand letters sent by Trustee's counsel.  Exhibit DD comprises  26 separate demand letters sent out between April and November 2002.  Twelve of those letters assert an avoidance right under § 549 for post petition transfers.[4]  Ten of those 12 letters are with respect to vendors identified in paragraph 20 of the Complaint and each letter identifies a dollar amount of the demand exactly matching the

---

[4]These 12 § 549 demand letters are with respect to:

| Vendor/Payee | Amount |
| --- | --- |
| Allegheny Energy Company, Inc. | $62,831.00 |
| Arthur Anderson LLP | $30,452.50 |
| Bekins | $ 5,400.06 |
| Federal Envelope Company | $ 6,900.52 |
| G.F. Puhl Co., Inc. | $ 6,150.00 |
| Lloyd H. Gordon | $64,316.66 |
| Midwest Marketing Specialists, Inc. | $11,346.15 |
| Performance Printing Corporation | $71,117.88 |
| Queen City Paper Co. | $36,149.66 |
| Southern California Edison Co. | $34,389.96 |
| Stimpson Co., Inc. | $ 8,460.00 |
| Transparent Container Co., Inc. | $ 5,442.82 |

amount set forth for those 10 vendors in paragraph 20 of the Complaint.

Starting in August 2002 Trustee's counsel commenced filing a number of adversary proceedings seeking recoveries pursuant to the Bankruptcy Code's avoidance powers. Specifically, according to my count, between August and December 2002 Trustee filed 151 avoidance actions.[5] It appears that the vast majority of these actions are with respect to § 547 preference transfers. However, according to my count, 16 of those avoidance actions (filed between September and November 2002) assert as a separate count avoidance rights pursuant to § 549 for post petition transfers.[6] Six of those 16 counts match the creditors and amounts of six of the transfers identified in paragraph 20 of the Complaint.

Query: what to make of the 12 demand letters asserting a § 549 right of recovery and 16 avoidance actions seeking recovery based on § 549 when the statute of limitations had long since run on those claims?  I would certainly not want to believe that

---

[5]Given the large number of avoidance actions filed, presumably Trustee's counsel sent out more than the 26 demand letters copied as Exhibit DD in the Etter declaration.

[6]These 16 § 549 avoidance counts are found in the complaints in Adv. Proc. Nos. 02-05719; 02-05722; 02-05723; 02-05726; 02-05730; 02-06246; 02-06247; 02-06649; 02-06655; 02-06670; 02-06676; 02-06692; 02-06709; 02-06960; 02-06697 and 02-06728.

Trustee's counsel intentionally asserted claims that counsel knew were time-barred.   Rather, I believe the above recited facts strongly suggest that Trustee's professionals were laboring for a long period of time under the impression that the § 549 recoveries were entitled to the same statute of limitations extension as accorded by § 546(a) for other avoidance power provisions of the Bankruptcy Code.

It appears that at some later date Trustee's counsel concluded that the statute of limitations on § 549 recoveries had long since expired.   This is certainly evidenced by Trustee counsel's September 22, 2003 letter to GDC inquiring as to why the Debtors did not initiate avoidance actions under § 549 prior to the two-year statute of limitations.  (Fairman Declaration, Adv. Doc. # 74, Ex. 6).   There appears to be earlier evidence of this conclusion.  For example, in one of the avoidance actions asserting recoveries under both §§ 547 and 549, Steven G. Singer v. W & D Machinery Co., Inc., Adv. Proc. No. 02-06246, the defendant filed a motion to dismiss on the grounds that the statute of limitations had expired both as to the § 547 claim and the § 549 claim.   In his answering brief, filed on January 29, 2003, Trustee extensively argued the § 547 statute of limitations issue but the brief is silent as to the § 549 statute of limitations.

**CONCLUSION**

There is substantial evidence that Trustee and his professionals did not focus on the time limitation set forth in § 549(d) until long after the GDC final fee award and therefore they had no reason to examine what GDC did or did not do prior to the conversion relative to avoidance recoveries.  On the facts recited above, a reasonable person could conclude that Trustee and his professionals did not consider GDC's professional obligations vis-a-vis § 549 because they did not, prior to the final fee application approval, distinguish the § 549 avoidance actions' two-year time limit from the two-year plus one-year time limit provided by § 546(a) for other avoidance actions.  Not recognizing the difference there would be no reason to believe that there was a GDC malpractice issue.  Therefore, the summary judgement motion is denied.